# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS GOOLSBY,<br><br>        Plaintiff,<br><br>    vs.<br><br>GENTRY, et al.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:11cv01773 LJO DLB PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT<br>(Document 33-2)<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO FILE SURREPLY<br>(Document 56)<br><br>THIRTY-DAY DEADLINE |

Plaintiff Thomas Goolsby ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR").  Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action on October 25, 2011.

## A.      PROCEDURAL HISTORY

On May 20, 2013, the Court screened Plaintiff's First Amended Complaint ("FAC") and found the following cognizable claims: (1) First Amendment retaliation claim against Defendants Gentry, Noyce, Eubanks, Tyree, Medrano, Holman, Holland and Steadman; and (2) violation of due process against Defendants Eubanks, Tyree, Medrano, Holland and Gutierrez. The Court dismissed all other claims and Defendants.

1

On November 26, 2013, Defendants filed a motion to dismiss the due process claims based on failure to state a claim and failure to exhaust.[1]  Defendant Holman joined in the motion on December 13, 2013.

Plaintiff filed his opposition on January 6, 2014, and with Court permission, he filed a supplemental opposition on January 28, 2014.

Defendants filed their reply on March 13, 2014.

Plaintiff filed a motion for leave to file a surreply, along with a surreply, on March 24, 2014.

On April 1, 2014, based on the parties' submission of outside evidence, the Court converted the portion of the motion to dismiss based on failure to state a claim into a motion for partial summary judgment.

On April 10, 2014, based on the Ninth Circuit's ruling in Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014), the Court converted the exhaustion portion of the motion to dismiss into a motion for summary judgment.  On September 19, 2014, the Court issued Findings and Recommendations to grant the motion for summary judgment based on exhaustion and dismiss the due process claims against Defendants Holland and Gutierrez.

The instant Findings and Recommendations address only the portion of the motion for summary judgment based on the failure to state a claim portion of the original motion to dismiss. The issue is fully briefed and ready for decision pursuant to Local Rule 230(l).

**B.     PLAINTIFF'S MOTION TO FILE SURREPLY**

Parties do not have the right to file surreplies and motions are deemed submitted when the time to reply has expired.  Local Rule 230(l).  The Court generally views motions for leave to file a surreply with disfavor.  Hill v. England, 2005 WL 3031136, at *1 (E.D. Cal. 2005) (citing Fedrick v. Mercedes-Benz USA, LLC, 366 F.Supp.2d 1190, 1197 (N.D. Ga. 2005)).  However,

---

[1]  Defendants are not moving to dismiss the retaliation claim.

district courts have the discretion to either permit or preclude a surreply.  See U.S. ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195, 1203 (9th Cir. 2009) (district court did not abuse discretion in refusing to permit "inequitable surreply"); JG v. Douglas County School Dist., 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in denying leave to file surreply where it did not consider new evidence in reply); Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996) (new evidence in reply may not be considered without giving the non-movant an opportunity to respond).

Here, Plaintiff's surreply addresses issues that were raised for the first time in the reply and/or clarifies some of Plaintiff's arguments.  Given that Defendants' motion was construed as a motion for summary judgment, and because Defendants did not oppose the motion, the Court will GRANT Plaintiff's request.  The Court notes, however, that the arguments in the surreply did not factor into the Court's decision.

## C.   ALLEGATIONS IN FAC[2]

Plaintiff alleges that he was validated as an associate of the Nazi Low Rider ("NLR") prison gang in February 2011.  He believes that he was validated in retaliation for his lawsuits and appeals.   In connection with his validation, Plaintiff alleges that Defendant Eubanks used an illegal "filter list" as evidence to support the validation.  On January 26, 2010, Defendant Eubanks authored a confidential memorandum indicating that he found a filter list in the property of two other inmates.  Plaintiff's name appeared on this list and Defendant Eubanks assumed that it was reliable evidence of gang association.  Plaintiff appealed this issue.  The appeal was answered by Defendants Holland and Gutierrez, who were aware of the use of the illegal filter list but continued to allow its use.

Plaintiff further contends that in response to the validation packet, he wrote a detailed rebuttal to the allegations.  He handed his rebuttal to Defendant Eubanks, yet the packet stated

---

[2]  Only allegations relating to the due process claims are summarized.

that the investigation was already complete.  Defendant Eubanks did nothing with the rebuttal and failed to investigate his contentions.  Plaintiff contends that this violated his right to due process because it denied him an opportunity to be heard in a meaningful way.  Plaintiff appealed this issue.  The appeal was answered by Defendants Holland and Gutierrez, who were aware of the issue but did nothing to allow Plaintiff to be heard in a meaningful way.

Next, Plaintiff alleges that Defendant Medrano reviewed Plaintiff's address book, which was confiscated by Defendant Tyree on May 15, 2009.  He contends that this address book included names of prisoners, some of which were friends or were witnesses to planned litigation. Defendant Medrano reviewed the names and came up with two inmates who were validated. Plaintiff had no idea that these inmates were validated at the time he received their information, and had he known, he would not have possessed their information.  The two inmates in question were both witnesses in a legal action that Plaintiff was prosecuting, and neither was contacted for personal or gang-related reasons.  He contends that Defendants Medrano and Tyree had no evidence that Plaintiff possessed their information for any reasons other than legitimate ones. Plaintiff brought this issue to the attention of Defendants Holland and Gutierrez, but they called to review the issue in any meaningful manner.

**D.**    **SUMMARY JUDGMENT STANDARD**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider

other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); <u>Carmen v. San Francisco Unified School Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001); accord <u>Simmons v. Navajo County, Ariz.</u>, 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case.  <u>In re Oracle Corp. Securities Litigation</u>, 627 F.3d 376, 387 (9th Cir. 2010) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)).  If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." <u>In re Oracle Corp.</u>, 627 F.3d at 387 (citing <u>Celotex Corp.</u>, 477 U.S. at 323).  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." <u>Id</u>. (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct. 1566 (2012).  The Court determines only whether there is a genuine issue for trial, and Plaintiff's filings must be liberally construed because he is a pro se prisoner.  <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

**E.    <u>DISCUSSION</u>**

1.    <u>Applicable Law</u>

The assignment of validated gang members and associates to the SHU is an administrative measure rather than a disciplinary measure, and is "essentially a matter of administrative discretion." <u>Bruce v. Ylst</u>, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting <u>Munoz</u>

v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)).  As a result, prisoners are entitled to the

minimal procedural protections of adequate notice, an opportunity to be heard, and periodic

review.  Bruce, 351 F.3d at 1287 (citing Toussaint v. McCarthy, 801 F.2d 1080, 1100-01 (9th

Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995)).

In addition to these minimal protections, there must be "some evidence" supporting the

decision.  Id. (citing Superintendent v. Hill, 472 U.S. 445, 454 (1985)).  Although discussed in

the context of a disciplinary hearing, the Ninth Circuit has stated that under the Hill standard, the

evidence should have some indicia of reliability.  Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.

1987).

The "some evidence" review requires the Court to ask only "whether there is any

evidence in the record that could support the conclusion."  Castro v. Terhune, 712 F.3d 1304,

1314 (9th Cir. 2013) (citing Bruce, 351 F.3d at 1287).  This test is "minimally stringent."  Powell

v. Gomez, 33 F.3d 39, 40 (9th Cir.1994).  Accordingly, the Court does not examine the entire

record, independently assess witness credibility, or reweigh the evidence.  Castro, 712 F.3d at

1314 (citing Bruce, 351 F.3d at 1287).

Evidence only must bear "some indicia of reliability" to be considered "some evidence."

Toussaint v. McCarthy, 926 F.2d 800, 803 (9th Cir.1990).  Moreover, evidence may qualify as

"some evidence," even if it does not "logically preclude[ ] any conclusion but the one reached."

Hill, 472 U.S. at 457, 105 S.Ct. 2768.

Plaintiff argues that he is entitled to additional procedural protections because his

validation extended his release date pursuant to California Penal Code section 2933.6 and section

3043.4(b) of Title 15 of the California Code of Regulations.  However, the Court addressed this

argument in the prior screening order, and the analysis has not changed.  In the May 20, 2013,

screening order, the Court explained:

> Plaintiff's argument, however, misstates the law and ignores a critical difference
> between the treatment of good time credit in disciplinary hearings and in gang
> validations.  In disciplinary hearings, earned good time credits are taken away, resulting

6

in increased procedural due process protections because an otherwise earlier release date may be invalidated.  Under 2933.6(a), however, an inmate who has been validated in a gang does not lose earned credit, but rather becomes ineligible to earn additional credits while in segregated housing.  Plaintiff's inability to earn additional credits does not alter a previously earned release date.  Accordingly, the Court will not expand procedural due process protections in gang validations beyond what is currently required by the Ninth Circuit.

ECF No. 20, at 9.

Plaintiff continues to argue that, regardless of the law, his release date was extended. Again, if Plaintiff's release date was extended, it is not because credits were taken away.  Rather, pursuant to the sections that he relies on, he cannot *earn* good time credit while in Ad-Seg or the SHU after validation.

### 2.   Plaintiff's Allegation that Validation Packet was Falsified

While Plaintiff argues that Defendants cannot use certain items in his validation packet, his overall contention relates to his belief that his validation packet was a "sham" and "manufactured" in retaliation for lawsuits and prison appeals.  ECF No. 43, at 4.

However, false charges alone do not state a claim under section 1983 because "falsely accusing an inmate of misconduct does not violate a right secured by the Constitution or laws of the United States."  Toscano v. Lewis, 2013 WL 1632691, *6 (N.D. Cal. 2013).  If the false charges result in the deprivation of liberty interest, there is no due process violation if the inmate was given procedural protections at the disciplinary or administrative hearing.  Id.; see also Allah v. State of California, 1999 WL 273413, *1 (9th Cir.1999) ("the district court properly dismissed Allah's claims that two disciplinary reports filed against him by prison officials were based on false information because Allah received hearings on both reports") (citing Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986).

Similarly, as discussed above, an inmate cannot challenge the sufficiency of the evidence against him.  Thus, the Court does not examine the entire record, independently assess witness credibility, or reweigh the evidence.  Castro, 712 F.3d at 1314 (citing Bruce, 351 F.3d at 1287).

Plaintiff suggests that he is not asking the Court to re-weigh any evidence, but is asking the Court to take note that Defendant Noyce had already examined the same evidence and determined, in August 2010, that it was not sufficient to validate him.  Plaintiff believes that Defendant Noyce's August 2010 decision is proof that his validation was a sham.

However, Defendant Noyce's memorandum simply states that he conducted an "extensive review" of Plaintiff's central file at the request of the Institutional Classification Committee for gang status.  ECF No. 43, Ex. A.  Defendant Noyce concluded that there was insufficient information "within the Central" to be used in the Gang Validation Process.  ECF No. 43, Ex. A.  Therefore, other than Plaintiff's conclusory statement, there is no evidence of what documents Defendant Noyce examined in August 2010.  Indeed, at least one piece of Plaintiff's validation packet does not appear to have existed in August 2010.  ECF No. 52, Ex. Y (referring to a CDCR 128B dated 2/8/11 as an item meeting validation requirements).

In any event, Defendant Noyce's August 2010 analysis is not relevant to whether Plaintiff received procedural due process in relation to his current validation.

With these standards in mind, the Court will address Plaintiff's allegations.

3.    Use of Filter List

Plaintiff alleges that Defendant Eubanks confiscated a "filter list" in the property of two other inmates.  Plaintiff contends that his name appeared on the list and Defendant Eubanks improperly assumed that it was reliable evidence of gang association.

Plaintiff admits, and it is therefore undisputed, that Inmates Gehrke and Allen had Plaintiff's name, prison number, hometown and nickname "Klumzy" on a list in their cell.  It is also undisputed that Defendant Eubanks confiscated this list on December 18, 2009, during a search of Gehrke's and Allen's personal property.  Inmates Gehrke and Allen are validated NLR members, and Allen is also a validated associate of the Aryan Brotherhood ("AB") prison gang.  Defendant Eubanks referenced this "roster" in a confidential memorandum dated January 26,

2010, and noted that Plaintiff's inclusion on the "roster" evidences his association with the NLR and AB.  Trenary Decl., Ex. B.[3]  This list was one of five items used to validate Plaintiff as an associate of the NLR prison gang.  Trenary Decl., Ex. G.

The issue therefore becomes a question of law- whether, as Plaintiff argues, the use of the list was improper.  Contrary to Plaintiff's first argument, there is no per se bar against using such lists.  Plaintiff suggests that the lists are inherently unreliable, but his belief does not alter the fact that such lists are permissible in gang validations.  See 15 Cal. Code Regs.  3378(c)(8)(C); see also Castro v. Terhune, 712 F.3d 1304, 1315 (9th Cir. 2013) (possession of birthday card for another inmate who was a validated member, which the inmate had signed); Madrid v. Gomez, 889 F.Supp. 1146, 1273 (N.D.Cal. 1995) (roster found among validated Mexican Mafia associate's possessions, rather than voluntarily submitted by an inmate, provides the requisite indicia of reliability).[4]

Plaintiff also argues that the list is unreliable for numerous reasons.  He questions how a single list can be evidence of association with two gangs, but the inmates who were in possession of the list were validated members of *two* gangs.

Plaintiff next disagrees with Defendant Eubanks' finding that the list was reliable because it was obtained during an IGI investigation.  Trenary Decl., Ex. B.  According to Plaintiff,

---

[3]  Plaintiff challenges the documents attached to C. Trenary's Declaration for a variety of reasons.  His argument that the documents are outside the scope of his complaint is no longer relevant because Defendants' motion was converted to a motion for summary judgment.  Plaintiff also states that he "questions and challenges the authenticity" of the documents. ECF No. 43, at 5.  However, Plaintiff's challenge relates to his belief that the contents of the documents are false, and this is not a sufficient basis on which to object based on authentication.  Finally, Plaintiff suggests that a CDCR Form 1030 is "not evidence of anything," and is simply a disclosure form. ECF No. 43, at 5.  Plaintiff argues that only the document referred to in the 1030 is evidence.  Plaintiff is incorrect.  The Court may consider the Form 1030s because they provides identifying details about confidential information.

The Court also notes that for many of Trenary's exhibits, Plaintiff attaches the same documents to his supplemental opposition.

[4]  Plaintiff's citation to Lira v. Cate does not stand for the proposition that rosters are inherently unreliable.  The only reported decision in Lira v. Cate, 2010 WL 727979 (N.D.Cal. 2010), deals with attorneys' fees, and while the decision notes that the plaintiff's due process rights were validated because the evidence used to validate him lacked a sufficient indicia of reliability, the case does not state the nature of the evidence.

section 3321(c)(4) requires a separate investigation to corroborate the initial evidence. Plaintiff contends that because a separate investigation did not corroborate the fact that Plaintiff gave his information to the inmates for gang reasons, it is not reliable. Section 3321(c)(4), however, states only that a confidential source's reliability may be established where "part of the information provided is corroborated through investigation of by information provided by non-confidential sources." There does not need to be a specific finding that Plaintiff gave his information to the inmates *for gang-related reasons.*

Similarly, Plaintiff attempts to argue that the list is not reliable because the inmates had Plaintiff's name and other information for a legitimate purpose. For example, Inmate Allen was a witness in another of Plaintiff's lawsuits, and Inmate Gehrke joined in Plaintiff's appeals and was a "co-plaintiff" with Plaintiff in two separate actions. According to Plaintiff, this means that he was required by the Court and CDCR to give these inmates his information.

Plaintiff's argument fails, however. Due process does not require that there be no alternative explanation for evidence used in gang validation. Superintendent v. Hill, 472 U.S. 445, 457 (1985) ("The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board."). Instead, as explained above, due process requires that there be "some evidence" and that the evidence have some indicia of reliability. Here, the list meets this test. It was involuntarily confiscated during a search of inmates who were known NLR members. That the inmates knew not only Plaintiff's name and prison number, but also his hometown and gang moniker, also offers an indicia of reliability. Moreover, the list was not prepared by a confidential informant seeking good favor with a correctional officer. See eg. Escalante v. Lewis, 2012 WL 215253, *2-3 (N.D.Cal. 2012) (roster was reliable because it was seized as contraband, and it can reasonably be inferred from the circumstances surrounding the seizure that it was prepared secretly and for use by gang affiliates).

Once the document is found to have an indicia of reliability, as here, Plaintiff's inclusion on the list constitutes some evidence of gang affiliation. Based on the undisputed facts, there is no genuine issue of material fact related to the filter list.

    4.   <u>Address Book</u>

Plaintiff alleges that Defendant Medrano reviewed Plaintiff's address book, which was confiscated by Defendant Tyree on May 15, 2009. Defendant Medrano reviewed the names and came up with two inmates who were validated NLR members. Plaintiff had no idea that these inmates were validated at the time he received their information, and had he known, he would not have possessed their information. He alleges that the two inmates in question were witnesses in one of Plaintiff's legal actions, and that Medrano and Tyree had no evidence that Plaintiff possessed their information for any reasons other than legitimate ones.

Plaintiff admits, and it is therefore undisputed, that Plaintiff had the names, prisoner numbers and addresses of inmates Baumgaertel and Pandolfi. He argues, however, that he had legitimate legal reasons for having their information. For example, Plaintiff contends that Inmate Baumgaertel was witness in one of Plaintiff's legal actions, and that the Court required Plaintiff to submit his name and prison number. Plaintiff explains that he had Inmate Pandolfi's contact information because he was involved in a 2007 cell extraction for which Plaintiff contemplated litigation.

Again, however, the fact that there may have been an alternate explanation as to why Plaintiff possessed their information does not, alone, preclude use of the information. <u>Hill</u>, 472 U.S. at 457. Nor do Defendants have to prove that Plaintiff had their information for gang related reasons. <u>See</u> <u>Andrade v. Lewis</u>, 2013 WL 5694331, *6 (N.D.Cal. 2013) ("In light of the well-recognized danger posed by prison gangs, prison officials properly could determine that, by being affiliated with a gang, the inmate does pose a threat and endanger institutional security because prison gangs endanger institutional security.").

Despite Plaintiff's arguments, address books can be used in gang validations, 15 Cal. Code Regs. § 3378(c)(8)(G), subject only to the indicia of reliability requirement.  In a February 8, 2011, IGI Review (CDC 128-B), Defendant Medrano stated that Plaintiff's address book contained the names and prison numbers of two validated NLR members and one validated AB associate.  Defendant Medrano found that by keeping this information, Plaintiff evidenced his past and current association with these inmates, as well as the fact that Plaintiff is in "good standing."  Trenary Decl., Ex. C.

Based on the undisputed facts, there is no genuine issue of material fact related to the use of Plaintiff's address book.

5.   Plaintiff's Rebuttal

Finally, Plaintiff alleges that he gave Defendant Eubanks a written rebuttal, but Defendant Eubanks denied him a meaningful opportunity to be heard.

It is undisputed that on or about February 11, 2011, Plaintiff gave Defendant Eubanks his written rebuttal to the gang investigation.  Trenary Decl., Ex. A.  Plaintiff argues, however, that this was not "meaningful" because at that time, the investigation had already concluded.

Plaintiff is correct, and Defendants agree, that the investigation was "complete" when Plaintiff handed his rebuttal to Defendant Eubanks.  However, that the *investigation* was complete does not mean that a decision had been made on Plaintiff's validation.  Indeed, pursuant to the procedure set forth in section 3378(c)(6), the source items used must be presented to the inmate prior to an opportunity to be heard.  "All source items referenced in the validation or inactive status review shall be disclosed to the inmate/parolee at the time of notification."  15 Cal. Code Regs. § 3378(c)(6)(C).

It is only logical that an investigation into the source items would be completed prior to notification to the inmate.  This allows the inmate to prepare for the interview, where he will be given an opportunity to be heard and an opportunity to challenge the items in his validation

packet.  According to the Gang Validation Chrono completed by Defendants Noyce and Eubanks, Plaintiff was told of the information being utilized in the gang validation process on February 11, 2011.  He was also advised that an interview would be held not less than twenty-four hours after this notice.  Trenary Decl., Ex. A.

Plaintiff's argument is a distinction without a difference.  He argues that the proper steps are: (1) first, an inmate is offered an opportunity to explain the situation; (2) second, the IGI takes the statements into consideration and does any necessary further investigation; and (3) the IGI then decides whether to send the validation packet to the Office of Correctional Safety ("OCS").  ECF No. 43, at 14.

This is exactly what happened in this case.  Plaintiff was given notice of the source items on February 11, 2014.  On February 14, 2011, Plaintiff was interviewed regarding the documents utilized and he provided a written statement.  Defendant Noyce (the IGI) and Defendant Eubanks (the assistant IGI) reviewed his written response, which is attached to the Gang Validation Chrono, and determined that Plaintiff's claims were meritless and did not warrant further investigation.  At that point, "IGI concluded there is sufficient evidence to validate" Plaintiff as an associate of the NLR prison gang.  The Gang Validation concludes by stating that "[t]he aforementioned information will be forwarded to the OCS for review and acceptance" of the validation.  Trenary Decl., Ex. A.

In other words, while the investigation may be have been completed prior to Plaintiff offering his written statement, the decision to forward the packet to OCS was made after the IGI and assistant IGI considered his written statement.  The OCS received the gang validation packet on March 2, 2011, and he was validated on March 29, 2011.  Plaintiff was given notice of the validation on June 7, 2011.  Trenary Decl., Ex. G.

The undisputed facts therefore demonstrate that Plaintiff was given a meaningful opportunity to be heard by the critical decision-maker.[5]  Castro, 712 F.3d at 1308; see also Andrade v. Lewis, 2013 WL 5694331, *5 (N.D.Cal. 2013) ("A losing party who asserts that the adjudicating entity didn't really consider the evidence does not show a triable issue of fact simply by making the assertion.").

       6.     <u>Remaining Evidence Used in Validation</u>

The Court has determined that Defendants did not err in their use of the filter list or address book, and that these items had an indicia of reliability.  Nonetheless, the Court notes that Defendants relied on additional items in their decision to validate Plaintiff.

Specifically, Defendants relied on these three additional items: (1) in debriefing of another NLR member, Plaintiff was identified as being a courier of notes on behalf of the NLR and being involved in the assault of another validated NLR member; (2) during the search of another inmate's cell, a note was discovered.  The note, authored by Plaintiff, indicated that Plaintiff was "quite close" two validated NLR members; and (3) a handwritten note, discovered on March 19, 2009, identified Plaintiff as being involved in the assault referenced during the debriefing in item one.  Trenary Decl., Exs. D, E, F.

In his supplemental opposition, Plaintiff submits his explanation of these three items.  However, in reviewing the evidence, the Court does not examine the entire record, independently assess witness credibility, or reweigh the evidence.  Castro, 712 F.3d at 1314 (citing Bruce, 351 F.3d at 1287).  Whether there was "some evidence" to support a validation is a question of law.  Id.

Therefore, despite Plaintiff's disagreement with the evidence, the Court finds that there is some evidence to support his validation and that this evidence meets the reliability requirement.

---

[5]  Insofar as Plaintiff contends that Defendant Noyce, and not Defendant Eubanks, was the critical decision maker, the Gang Validation Chrono is signed by both Defendants Eubanks and Noyce.  Therefore, although Plaintiff alleges that he gave his rebuttal to Defendant Eubanks, the Gang Validation Chrono indicates that they both considered it. Trenary Decl., Ex. A.

Plaintiff has not shown that there is a triable issue of fact as to whether there was some evidence to support his validation.

**F.**     **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      Defendants' motion for partial summary judgment, filed November 26, 2013, be GRANTED;

2.      Judgment be entered on Plaintiff's due process claim in favor of Defendants Eubanks, Medrano, and Tyree; and

3.      This action proceed on Plaintiff's retaliation claim against Defendants Gentry, Noyce, Eubanks, Tyree, Medrano, Holman, Holland and Steadman.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 29, 2014**                          /s/ *Dennis L. Beck*
                                                UNITED STATES MAGISTRATE JUDGE